No. 32,531

In the Matter of the Contest of FRANK C. WOODRUFF, as Contestor, *Appellant,* v. D. S. BELL, as Contestee, for the Office of Probate Judge of Woodson County, *Appellee.*

(53 P. 2d 498)

Opinion filed January 25, 1936.

*G. H. Lamb* and *W. E. Hogueland,* both of Yates Center, for the appellant.
*Hoyt F. White,* of Yates Center, for the appellee.

The opinion of the court was delivered by

BURCH, C. J.: The proceeding was one by Frank C. Woodruff, candidate for election to the office of probate judge, to contest the election of his opponent, D. S. Bell, by an announced majority of sixteen votes. The contestor was unsuccessful, and appeals.

At the hearing before the contest court, the contestor offered evidence which was admitted, but was later disregarded, and offered evidence which was rejected. The contestor moved that the ballots cast at the election be produced and counted. The motion was denied. A demurrer to the contestor's evidence was then sustained, and he appealed to the district court. The district court announced it sat as an appellate court. It refused to hear evidence, examined the transcript from the contest court, and approved and confirmed the rulings, decisions and judgment of the contest court. From the transcript, so considered, the district court found the contestor's showing was insufficient to overcome the prima facie legality of the returns of the judges and clerks of election.

Following the general election in the year 1934, two contests were instituted. One related to the office of county clerk, and is referred to as the Stockebrand-Shaw contest. The other related to the office of probate judge, and the proceedings are now under review.

The Stockebrand-Shaw contest was tried first. The ballots were produced and counted. In the course of the count, several persons whose capacity and integrity are not questioned, handled the ballots, inspected them, and noted the markings. In the present contest the number of ballots cast and counted by the election boards was shown by correspondence in number of the ballots on the strings from the various election precincts with the number shown by the official returns. The persons who had observed and noted the ballot markings in the first contest gave testimony describing the markings. This testimony disclosed that some 220 illegal ballots were cast and counted at the election.

A witness who was present when the ballots were counted in the Stockebrand-Shaw contest kept count of the ballots for Bell in one ward of one city. Her testimony was offered to prove that the actual number of votes Bell received in that ward was 135, while the official returns showed he received 172. This testimony was rejected by the contest court.

The theory of the contest court was announced when the evidence relating to illegal ballots was admitted:

"For the purpose of completing the records, the court's decision is, that they are going to allow the testimony to be heard at the present. However, it is the theory of this court that it is not the best evidence. That there was a written record in the contest court wherein Ed Stockebrand was contestor and Dick Shaw was contestee which speaks for itself and is the best evidence. That it is the further theory of this contest court that each case must be settled and determined under the best-evidence rule, and taking into consideration the fact that had there been no contest between Mr. Stockebrand and Mr. Shaw, that this evidence would not be available to Mr. Woodruff as contestor in this case."

The theory dominated the action of the contest court throughout the proceeding and was quite fantastic.

The return of the election officials was that Bell was elected. That return was prima facie correct. Whether the return was correct or not could be established by a correct count of legal ballots, the best evidence on the subject. Woodruff could not, however, call for production and count of the ballots in the first instance. He was obliged to make a preliminary showing sufficient to overcome the presumption the official return was correct. (*Free v. Wood,* 137 Kan. 939, 22 P. 2d 978.)

Woodruff produced evidence that the official count could not be correct, because a large number of illegal ballots had been counted.

While this evidence was admitted, the contest court told Woodruff, in effect, the evidence was incompetent, because it was not the best evidence. Then Woodruff produced a witness whose testimony would have shown an irregularity sufficient to change the result of the election. The contest court would not hear the witness, on the ground she was not competent, a variation of the not-the-best-evidence theory. The so-called best evidence which the contest court had in mind was the record in the Stockebrand-Shaw contest. Woodruff was not a party to that proceeding. That proceeding did not involve the issue in Woodruff's contest, did not determine the issue in Woodruff's contest, and no matter what it determined, it did not bind Woodruff. Woodruff did not question the verity of that record. He did not seek to prove it nor to disprove it, to contradict it, nor to explain it, because it established nothing against him. In making that record, certain material objects were exposed to view, having physical characteristics capable of accurate oral description. The characteristics denoted legal consequences; but whether, in the first contest, legal ballots were thrown out or counted, whether illegal ballots were counted or thrown out, whether the count was correct or incorrect, whether Stockebrand or Shaw was elected county clerk, was of no importance to Woodruff, or to the contest court in Woodruff's contest. The result is that in the second contest persons who, from their observation, were able to describe the ballots, should have been permitted to do so.

The principle involved was stated and applied in the case of *State v. Tabor*, 63 Kan. 542, 66 Pac. 237. The syllabus reads:

"A county attorney trying a criminal case is not incompetent by statute, or legal policy, to testify in behalf of the defendant as to contradictory statements made by one of the state's witnesses on a former trial of the case."

While the testimony was offered for purpose of impeachment and a claim of privilege was discussed, the court said, in effect, that if, after a trial, it should become material to know what a witness said at the trial, anyone who heard the testimony could be required to give his recollection of it. So, if it should be material after a trial to know the appearance of an object which was exhibited at the trial, anyone who observed its appearance would be competent to give his description of it.

The district court announced it sat as an appellate court. What the court did shows what was meant. The court sat precisely as if the contest came to it by the obsolete method of writ of error, and

sat as an appellate court such as this court, which expounds the law and corrects errors in proceedings of inferior courts, but does not try cases *de novo*.

The word "appeal" is used in a general sense to indicate simply the taking of a case from an inferior court to a superior court. The word is also used to indicate a specific method of taking a case from an inferior to a superior court—appeal as distinguished from writ of error, certiorari, etc. The word "appellate" has a general meaning, and it has a specific meaning indicating the distinction between original jurisdiction and appellate jurisdiction. In this state there is but one way to take a case from an inferior court to a superior court:

"All reviews of the judgments and orders of inferior courts shall be by appeal. Petitions in error are abolished." (R. S. 60-3304.)

Before enactment of this statute in 1909, a proceeding in error took up nothing but questions of law for review. An appeal removed the entire cause, the facts as well as the law, for reëxamination, if the appellate court had jurisdiction to try *de novo*. An appeal still does that. This court cannot try *de novo*, because of limitation of jurisdiction. The district court is a court of general jurisdiction, and whenever a case is appealed to the district court it should proceed as if the case originated there, unless some specific statute provides otherwise. R. S. 60-3308, cited by the contestee, relates to manner of taking appeals and not to jurisdiction of the appellate court after an appeal has been perfected.

The contestee calls attention to the fact the contestor filed no motion for new trial. The fact is immaterial because of the peculiar manner in which the district court considered and disposed of the case.

The judgment of the district court is reversed, and the cause is remanded for trial.